**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch**

Civil Action No. 11-cv-02594-RPM

DALE GROSS,

    Plaintiff,

    v.

GUILERRMO SAMUDIO, Community Parole Officer, in his personal capacity;
IAN SWEENEY, Community Parole Officer, in his personal capacity;
JENNIFER DUNCAN, Community Parole Officer, in her personal capacity;
ANTHONY YOUNG, Chair of the Colorado Parole Board, in his personal capacity;
ED THOMAS, Member of the Parole Board, in his personal capacity;
DENISE BALAZIC, Member of the Parole Board, in her personal capacity;
PATRTICIA BAN WAAK, Member of the Parole Board, in her personal capacity;
JOHN O'DELL, Member of the Parole Board, in his personal capacity;
MICHAEL ANDERSON, Member of the Parole Board, in his personal capacity;
REBECCA OAKES, Member of the Parole Board, in her personal capacity;
JOHN DOES Numbers 1-2, unknown officers of RSA, Inc.;
WALTER T. SIMON, President of Progressive Therapy Systems, P.C.
JOHN DOES Numbers 3-4, unknown officers of Progressive Therapy Systems, P.C.;
FREDERICK E. TOLSON, President of Sexual Offense Resource Services, LLC;
JOHN DOES Numbers 5-6, unknown officers of Sexual Offense Resource Services, LLC'
GREIG VEEDER, President and Director, Teaching Humane Existence Treatment Program, Inc.;
JOHN DOES Numbers 7-8, unknown officers of Teaching Humane Existence Treatment Program, Inc.,

    Defendants.

---

**ORDER GRANTING DEFENDANT WALTER T. SIMON'S MOTION TO DISMISS**

---

Plaintiff Dale Gross was classified as an S-4 sex offender by the Colorado Department of Corrections when he entered prison in 2000, even though he had not been convicted of a sex offense. His court challenges to that classification were rejected. Gross

1

was released from prison in August 2008 and, pursuant to his sentence, was subject to five years of mandatory parole. Gross was required to participate in offense-specific mental health treatment as a condition of his parole.

Treatment for persons classified as sex offenders is regulated by the Sex Offender Management Board ("SOMB"), a state entity that was formed within the Colorado Department of Public Safety pursuant to Colorado law. *See* Colo. Rev. Stat. § 16-11.7-103. The SOMB has promulgated Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders ("SOMB Standards"). The SOMB Standards require that an offender take responsibility for his/her conduct as part of the rehabilitative process. [*See* Doc. 19, Ex. A at 41.][1] Progressive Therapy Systems ("PTS") is a for-profit, professional corporation that provides treatment for sex offenders according to the SOMB Standards, pursuant to a contract with the State of Colorado.

Gross entered treatment with PTS in September 2008. From the beginning, he refused to take responsibility for his crimes and the conduct that led to his administrative classification as a sex offender. He was also hostile and abusive to PTS staff and other patients. On two occasions in early December 2008, Gross went to the Governor's office to complain about being required by his parole to admit to sexual misconduct when in fact he had been acquitted of sexual assault, which raised the hackles of state officials, who demanded that Gross stay away from the State Capitol Building. Thereafter, Peter Briggs, a PTS clinician who oversaw Gross' treatment, allegedly made comments to Gross such as "how's the Governor doing?" during group therapy sessions. Gross subsequently lodged a

---

[1] *See Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (a district court may "take judicial notice of its own files and records, as well as facts which are a matter of public record" in considering a motion to dismiss).

2

complaint against Briggs with the Colorado Department of Regulatory Agencies ("DORA") for unprofessional conduct.

PTS discharged Gross from treatment in January 2009. The state Parole Board subsequently revoked his parole and returned him to prison in February 2009. Upon Gross' release in August 2009, Jennifer Duncan, his parole officer, directed him to Sex Offender Resource Services, LLC ("SORS") for evaluation and treatment. SORS determined Gross was not amenable to offense-specific treatment because he "continued to deny any sexually inappropriate behavior." The parties do not address what happened with Mr. Gross' treatment from August 2009 and May 2010.

Duncan referred Gross to RSA, another treatment provider, in May 2010. Gross did not pass the RSA evaluation, either.

On January 20, 2011, Jennifer Duncan ordered Gross to contact Teaching Humane Existence ("THE"), a fourth treatment provider, for an evaluation. Gross never got evaluated by THE because he never successfully got in contact with them (though he apparently attempted to). One month later, Gross was taken into custody and charged as a parole violator.

A parole revocation hearing was held on March 14, 2011. The hearing officer recommended that Gross not be returned to prison so long as he enrolled in treatment at one of the four SOMB-approved providers in Denver—PTS, SORS, RSA or THE. However, the providers all declined to enroll Gross into treatment. Plaintiff alleges, upon information and belief, that Defendant Walter T. Simon, President of PTS, made the decision to reject Gross' enrollment on PTS' behalf. Because Gross could not be enrolled in treatment, the Parole Board returned him to prison for 180 days on April 4, 2011.

Plaintiff initiated this action against the above-captioned Defendants under 42 U.S.C. § 1983, alleging that Defendants violated his First, Fifth and Fourteenth Amendment rights when they refused to enroll him into treatment. Walter Simon has moved to dismiss Gross' claims against him.

Section 1983 provides a remedy for federal constitutional and statutory deprivations by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. To find state action, two general requirements must be fulfilled. First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State"; second, the defendant must "fairly be said to be a state actor." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

There is no allegation that Simon's decision to deny Gross treatment was an exercise of some right or privilege created by the State, or that it was made pursuant to a rule of conduct imposed by the State. Plaintiff cites to no state statute, regulation or rule of decision invoked by Simon, either explicitly or implicitly. While PTS—and, by extension, Simon— are regulated by the SOMB in how they evaluate and treat sex offenders, there is no allegation suggesting that the SOMB dictates their decisions as to whether to accept a referred offender for treatment. As far as the Court can tell, that decision rests purely within PTS' private discretion. Thus, the Court concludes that Gross has not satisfied the first state-action requirement.[2] Accordingly, Walter Simon did not act under color of state law for the purposes of 42 U.S.C. § 1983 and is, by consequence, not amenable to suit under that statute.

---

[2] Plaintiff asserts that he "alleged that Mr. Simon was acting under color of state law, and the allegations in the Complaint must be taken as true." [Doc. 37 at 17.] That is an incorrect statement of law. *See Ashcroft v. Iqbal*, 556

In addition, assuming Simon did act under color of state law, Plaintiff has failed to allege facts showing a plausible right to relief on his constitutional claims.

To sustain a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the government's actions were "substantially motivated" as a response to his constitutionally protected conduct. *See Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). Substantial motivation requires a plaintiff to show that "but for the retaliatory motive, the incident to which he refers . . . would not have taken place." *Dawson v. Johnson*, 266 Fed. Appx. 713, 716 (10th Cir. 2008) (citation omitted). A plaintiff's subjective belief of retaliation is not enough; rather, the plaintiff must establish "specific facts" showing that he was retaliated against. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

Even if Gross has satisfied the first two elements of a retaliation claim, he has failed to allege specific facts that, if proven, would show that Simon's refusal to accept him into PTS' treatment program was substantially motivated by Gross' grievances to Colorado officials. In support of his claim, Gross alleges that Walter Simon denied him entry into PTS because:

> [Gross] filed a DORA Complaint against Peter Briggs, he successfully challenged the false allegations against him (and was acquitted by a jury of all of the charges alleging any sexual misconduct and another charge was thrown out as a result of a successful post-conviction motion), he exercised his constitutional right to challenge the constitutionality of the terms and conditions of his parole in *Gross v. Madrid, et al*, 10-cv-1581-RPM, and he continues to challenge the constitutionality of

---

U.S. 662, 678-79 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

> compelling him to admit to and accept responsibility for S.K's false allegations of sexual misconduct for which he was tried and acquitted.

[Doc. 1 at 23-24.]

Gross filed his DORA Complaint sometime in December or January 2008. Over two years passed between the DORA Complaint and Simon's March 2011 decision. Such a prolonged time period does not support a retaliatory motive; indeed, the inference is that Simon's decision had little, if anything, to do with Gross' DORA Complaint. Gross "successfully challenged the allegations against him" *before* PTS first admitted him for treatment in September 2008, so it is implausible to believe that Simon denied him for treatment in March 2011 for that reason. Finally, while Simon was presumably aware of Gross' lawsuit against PTS and Briggs, the allegations in the Complaint support a strong inference that PTS' prior treatment of Gross, during which Gross was difficult to interact with and unreceptive to the program, led Simon to believe that Gross would not have been successful a second time around. Thus, even assuming Simon held some amount of ill will towards Gross for suing PTS and Briggs, Plaintiff has failed to plausibly show that Simon's actions were "substantially motivated" by Gross' lawsuit. For these reasons, Gross' First Amendment retaliation claim fails. Since his Fourteenth Amendment claim is essentially a restatement of his First Amendment retaliation theory [*see* Doc. 37 at 18-19], that claim fails, as well.

For his Fifth Amendment claim, Plaintiff must establish that: (1) the statements desired by Simon carried the risk or incarceration; and (2) the penalty he suffered amounted to compulsion. *See Doe v. Heil*, --- Fed. Appx. ----, 2013 WL 4504772, at *3 n.4. (10th Cir. Aug. 26, 2013). Plaintiff claims that Simon "[kicked] him out of sex offender treatment" because he exercised his Fifth Amendment right "to be free from being compelled to 'admit'

to something criminal that never happened." [Doc. 37 at 18.] But Plaintiff does not allege any facts suggesting that the statements Simon allegedly sought carried the risk of incarceration. Because Plaintiff was acquitted of the sex offense for which he was charged, any statement he may have been required to give carried no such risk because the state would have been prohibited from re-trying him under the Fifth Amendment Double Jeopardy Clause. That is fatal to Gross' Fifth Amendment claim.

Because the Court has concluded that Plaintiff has failed to state a claim upon which relief can be granted, Plaintiff requests leave to submit an amended complaint. Leave to amend should be freely given unless, *inter alia*, amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff does not seek to add claims or adjust his theory, but presumably—he does not specify—wants to add allegations. The operative facts underlying Plaintiff's First Amendment retaliation claim are clear: Simon refused to enroll Gross into PTS' treatment program because Gross was, essentially, too much trouble. The Court does not believe that Plaintiff, having had nearly two years to develop and allege facts showing that Simon had a retaliatory motive, could now raise allegations plausibly establishing that "but for" Gross' protected speech, Simon would not have denied Gross treatment at PTS. That Plaintiff does not suggest any such allegations in seeking leave to amend underscores the point. In addition, no additional pleading on Plaintiff's Fifth Amendment claim can overcome the fact that Plaintiff was acquitted of his sexual offense, and therefore could not be tried again for the same conduct. For these reasons, the Court concludes that granting Plaintiff leave to amend his Complaint would be futile, and therefore denies his request.

Upon the foregoing, it is

8

ORDERED that Defendant Walter Simon's Motion to Dismiss is granted. The Clerk shall enter judgment for Defendant, dismissing all of Plaintiff's claims and awarding costs.

Dated: September 25, 2013

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch
Senior District Judge